Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| CARMEN GLADYS RIVERA DE JESÚS **Recurrida** | | *CERTIORARI* procedente del Tribunal de Primera Instancia Guayama |
|---|---|---|
| V | KLCE202400484 | Caso Núm: GM2022CV00312 |
| LCDO. ANTONIO MANUEL FERNÓS, UNIVERSIDAD INTERAMERICANA DE PUERTO RICO **Peticionaria** | | Sobre: Despido Injustificado |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2024.

El 2 de mayo de 2024, la Universidad Interamericana de Puerto Rico (UIPR o peticionaria) compareció ante nos mediante un recurso de *Certiorari Civil* y solicitó la revisión de una *Resolución* que se dictó el 4 de abril de 2024 y se notificó el 5 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la Sentencia Sumeria que presentó la UIPR.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de epígrafe y **revocamos** el dictamen recurrido.

I.

El 5 de mayo de 2022, la Sra. Carmen Gladys Rivera de Jesús (señora Rivera o recurrida) presentó una *Demanda* sobre despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, mejor conocida como *Ley de Indemnización por Despido sin Justa Causa*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80) y daños y perjuicios en contra de la señora Angela de Jesús Alicea (señora de Jesús), la Sra. Rosa Julia Martínez Ramos (señora

Número Identificador

SEN2024 _____

Martínez), la UIPR y el Sr. Antonio Manual Fernoz (en conjunto, los demandados).[1] En esta, alegó que trabajó como coordinadora del Programa AVANCE de la UIPR recinto de Guayama y que el 6 de mayo de 2021 fue despedida por "razones legalmente prohibidas" por la señora de Jesús y/o la UIPR. Señaló que la carta de despido que le remitieron indicaba que el despido fue por una reorganización operacional. Sin embargo, indicó que la UIPR continuó contratando a personal para distintas plazas y puestos los cuales ella alega que estaba cualificada para ellos. De igual forma, sostuvo que su despido fue uno constructivo. Particularmente, planteó que la señora de Jesús y la señora Martínez la hostigaron y acosaron y ejecutaron un plan de acción de desmantelación de sus funciones, operaciones y facilidades. No obstante, puntualizó que luego de su despido, la UIPR y/o la señora de Jesús le ofreció un puesto como técnica de servicios en el recinto de Humacao con un salario de $1,300.00.

En virtud de lo antes expuesto, reclamó una suma no menor de $500,000.00 por concepto de daños por sufrimientos y angustias mentales; $106,941.00 correspondiente a la cantidad de la mesada; $300,000.00 por concepto de daños físicos; y, por último $39,792.00 por ingresos dejados de percibir.

En respuesta, el 2 de junio de 2022, los demandados presentaron una *Contestación a la Demanda* y en esta negaron la mayoría de las alegaciones en su contra y presentaron sus defensas afirmativas.[2] Particularmente, argumentaron que la UIPR había tomado una decisión gerencial válida que requirió eliminar el puesto de la señora Rivera ya que hubo una disminución de matrícula en el programa. Consonó a lo antes expuesto, añadieron que un patrono tenía el derecho de modificar su manera de hacer negocios a través de un cambio dirigido a optimizar sus recursos y aumentar

---

[1] Véase, págs. 1-6 del apéndice del recurso.
[2] Íd., págs. 8-12.

sus ganancias para enfrentar problemas financieros siempre que respondiera a una restructuración. Por último, resaltaron que a la recurrida se le ofreció un puesto vacante en la UIPR en Humacao y que esta última lo aceptó. Sin embargo, indicaron que posteriormente, abandonó el empleo que ya había aceptado.

Cabe precisar, que ese mismo día, a saber, el 2 de junio de 2022, la parte demandada presentó una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[3] En síntesis, solicitó la desestimación de la causa de acción en contra del Sr. Antonio Manual Fernoz (señor Manual), la señora de Jesús y la señora Martínez. Además, solicitó la desestimación de la reclamación de daños y perjuicios al amparo del Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801. En respuesta, el 12 de julio de 2022, la señora Rivera presentó una *Moción en Oposición a Desestimación.*[4] Evaluados los escritos, ese mismo día, a saber, el 12 de julio de 2022, el TPI emitió y notificó una *Sentencia Parcial* en la cual desestimó con perjuicio las reclamaciones en contra del señor Manual, la señora de Jesús y la señora Martínez.[5] Asimismo, desestimó con perjuicio la reclamación de daños y perjuicios. Este dictamen nunca fue objeto de revisión en alzada por lo que advino final y firme.

Posteriormente, el 5 de julio de 2023, la UIPR presentó una *Moción de Sentencia Sumaria.*[6] En primer lugar, enumeró treinta (30) hechos que, a su juicio, no estaban en controversia. Luego, argumentó que, en vista de los hechos antes mencionados, el derecho aplicable y la prueba documental incluida como parte de la solicitud de sentencia sumaria, procedía dictar sentencia sumaria. Ello, ya que no existía controversia en cuanto a que la UIPR, como

---

[3] Íd., págs. 13-20.
[4] Íd., págs. 22-24.
[5] Íd., págs. 25-32.
[6] Íd., págs. 35-48.

parte de la implantación de un proceso de reorganización, tomó una decisión gerencial que, a su juicio, era válida y que requirió eliminar el puesto que ocupaba la peticionaria. Además, indicó que no existía controversia en que se le ofreció un puesto a la señora Rivera en otra clasificación y que esta última lo aceptó, sin embargo, posteriormente renuncio a este. Razonó que por lo antes expuesto no se dio un despido constructivo.

El TPI le concedió un término a la recurrida para presentar su postura en cuanto a la solicitud de sentencia sumaria.[7] No obstante, transcurrió el término concedido sin que esta presentara un escrito expresándose. Así pues, la parte peticionaria presentó una moción para que se diera por sometida la solicitud de sentencia sumaria sin la oposición.[8] Ante ello, el TPI emitió una *Orden* mediante la cual indicó que la referida moción se atendería en la Conferencia con Antelación a Juicio.[9] De la *Minuta* de esta vista surge que el TPI le concedió un nuevo término a la parte recurrida para presentar su oposición a la solicitud de sentencia sumaria.[10]

Oportunamente, el 11 de enero de 2024, la señora Rivera presentó su *Contestación a Sentencia Sumaria*.[11] En esta, enumeró unos hechos que había alegado en su *Demanda* y argumentó que la UIPR no los refutó en su solicitud de sentencia sumaria. Sostuvo que no se podía dictar Sentencia Sumaria ya que existía una controversia de hecho fundamental en si hubo un despido injustificado o no. Argumentó que el ofrecimiento del traslado para trabajar en el recinto de Humacao de la UIPR por un salario de $1,360 fue una de las maneras que la parte peticionaria escogió para presionarla, hostigarla y que renunciara. Por otro lado, planteo que, la UIPR no presentó prueba documental concreta para sustentar su

---

[7] Íd., pág. 71.
[8] Íd., págs. 72-74.
[9] Íd., pág. 75.
[10] Íd., págs. 76-77.
[11] Íd., págs. 79-88.

argumento de que se eliminó el puesto de la recurrida por un plan de reorganización por lo que no logró justificar el despido.

Así las cosas, el 22 de enero de 2024, la UIPR presentó una *Réplica a la Oposición* [...].[12] En esencia, reiteró lo expuesto anteriormente y puntualizó que la recurrida no cumplió con la Reglas 36.3(b) y (c) de Procedimiento Civil, *supra.* Particularmente, sostuvo que la recurrida no presentó evidencia sustancial pertinente y admisible para sustentar los hechos que, a su juicio, estaban en controversia. Argumentó que los hechos en controversia presentados fueron meras alegaciones, aseveraciones y conclusiones personales de la señora Rivera. Además, alegó que la declaración jurada que la recurrida presentó junto a su oposición constituía un "sham affidavit".

El 2 de febrero de 2024, la señora Rivera presentó una *Dúplica a Réplica* [...].[13] En síntesis, expresó que era el patrono el que tenía que probar que el despido fue uno justificado y que había controversia en cuanto a si el patrono la despidió o si fue un abandono del trabajo como lo alegó la UIPR. Ante ello, solicitó que se declarara No Ha Lugar la solicitud de Sentencia Sumaria.

Luego de la celebración de una vista argumentativa y evaluado los escritos de las partes junto a sus anejos, el 5 de abril de 2024, el TPI dictó una *Resolución* que se notificó el 8 de abril de 2024.[14] En primer lugar, realizó las siguientes determinaciones de hechos:

1. La demandante comenzó a trabajar en la Universidad Interamericana de Puerto Rico, Recinto de Guayama, el 8 de enero de 1986; al puesto directora del Programa Avance en el Recinto, el cual es utilizado en el proceso de matricula de estudiantes adultos.

2. El puesto que ocupaba la demandante era en la categoría no docente.

---

[12] Íd., págs.93-98.
[13] Íd., págs. 99-102.
[14] Íd., págs. 105-110.

3. En el mes de marzo 2018, la UIPR comenzó el plan para la reorganización operacional del Recinto de Guayama.

4. El plan fue preparado por la Rectora del Recinto de Guayama, Dra. Ángela de Jesús Alicea y su equipo de trabajo.

5. El plan de reorganización contenía tres objetivos junto con el plan de acción para lograr cada uno de éstos. El primer objetivo fue fomentar el desarrollo e implementación de una oferta académica que respondiera a las necesidades educativas de los estudiantes en y fuera de Puerto Rico. El segundo objetivo fue evaluar los programas académicos que presentan una disminución significativa de la matrícula en los últimos cinco años para colocarlos en moratoria. El tercer objetivo es desarrollar e implementar las medidas para lograr reducir los gastos operacionales del Recinto en términos de empleados docentes y no docentes de acuerdo con las proyecciones de matrícula.

6. El 6 de mayo de 2021, la UIPR notificó a la demandante la eliminación de su plaza para lograr mayor productividad y eficiencia debido a la disminución de la matrícula.

7. Tras la reorganización, no subsistió ningún puesto dentro de la clasificación ocupacional de a demandante. La UIPR ofrecía a la demandante un puesto de Técnico de Servicios de Matrícula que se encontraba disponible en el Centro Universitario Inter Humacao, con un salario de $1,360.00.

8. La oferta fue aceptada por la demandante el 13 de mayo de 2021. El 27 de mayo de 2021, la demandante notificó que no aceptaba el puesto de Técnico de Matrícula.

9. El último día de trabajo de la demandante fue el 30 de junio de 2021.

A pesar de que el TPI realizó las referidas determinaciones de hechos, concluyó que estas no eran suficientes para determinar si el despido de la señora Rivera fue uno ilegal, e injustificado; con hostilidades que resultaron en un despido constructivo, o si, por el contrario; el despido fue uno justificado. En consecuencia, declaró No Ha Lugar la solicitud de sentencia sumaria.

Inconforme con este dictamen, el 2 de mayo de 2024, la UIPR presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**Erró el Tribunal de Primera Instancia al declarar no ha lugar la moción de sentencia sumaria cuando de la resolución recurrida se desprende como hechos materiales no controvertidos que las circunstancias que llevaron a la eliminación del puesto de la recurrida fue la implantación en el Recinto de un plan de reorganización bona fide.**

**Erró el Tribunal de Primera Instancia al no determinar que la oposición a la moción de sentencia sumaria presentada por la recurrida no cumplió con lo dispuesto en las Reglas 36 (b) y (c) de las de Procedimiento Civil y la jurisprudencia que las interpreta.**

Atendido el recurso, el 7 de mayo de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 16 de mayo de 2024 para presentar su postura. Vencido el término para ello, la señora Rivera no presentó su respuesta al recurso de epígrafe. Por consiguiente, declaramos perfeccionado el presente recurso y estando en posición de resolver, procedemos a así hacerlo.

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así,

"el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se

opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. **Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra.** (Énfasis suplido) Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) **examinar de *novo* el expediente**; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) **en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia**, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho.

(Énfasis suplido) Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

-C-

Las leyes laborales tienen el propósito de proteger el empleo, regular el contrato de trabajo y asegurar la salud y seguridad de los obreros. *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 618 (2009). Ello ya que, en la relación obrero-patronal, los trabajadores son la parte más débil. Íd. Apoyados en esta premisa, mediante la Ley Núm. 80, *supra*, la Asamblea Legislativa incorporó el estándar de justa causa como limitación a toda acción de despido por parte del patrono. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 374-375 (2001). Así, la referida disposición legal "garantiza a todo empleado que trabaje mediante remuneración de alguna clase y que sea contratado por tiempo indeterminado, una compensación por su patrono –además del sueldo devengado– en caso de ser despedido sin justa causa". *López Fantauzzi v. 100% Natural,* 181 DPR 92, 108 (2011).

La Ley Núm. 80, *supra*, no define el término justa causa. *Jusino et als. v. Walgreens*, 155 DPR 560, 572 (2001). Sin embargo, enumera una serie de circunstancias que justifican el despido de un empleado. Íd. Específicamente, el Art. 2(e) de la legislación en cuestión, 29 LPRA sec. 185b, estatuye, en lo pertinente, que se considera justa causa para el despido "los cambios tecnológicos o de **reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público". Así pues, con la aprobación de la Ley Núm. 80, *supra*, el legislador reconoció que podrían existir circunstancias en el funcionamiento y manejo de los negocios y/o de índole económica que ameritaban despedir a un empleado por justa causa. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 984 (2022).

De este modo, el Tribunal Supremo estableció que, las empresas pueden cesantear a sus empleados sin tener la obligación de indemnizarlos conforme a la Ley Núm. 80, *supra*, cuando la decisión del despido se da como parte de una reorganización empresarial según lo dispone el Art. 2(e) de la Ley Núm. 80, *supra*. Íd., pág. 985. Sin embargo, para que un patrono pueda justificar un despido por reorganización "debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad". Íd., págs. 985-986. Consonó a ello, la reorganización debe ser *bona fide*. Íd., pág. 985. Es decir, la reorganización "no puede ser producto del mero capricho del patrono, sino producto de consideraciones relacionadas al manejo de la empresa". Íd. Como parte de la reestructuración *bona fide*, el patrono puede modificar su manera de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias. Íd. Por ejemplo, eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de

competitividad. Íd. A pesar de lo antes mencionado, cabe precisar que, el patrono tiene el deber de "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos". Íd., pág. 984.

**-D-**

Para propósitos de la Ley Núm. 80, *supra,* la definición de despido no se limita a la acción unilateral del patrono de cesantear al empleado, sino que la misma es abarcadora e incluye las acciones de este dirigidas a inducir o forzar al empleado a renunciar. *Rivera Figueroa v. Fuller Brush, Co.,* 180 DPR 894, 907 (2011). Esto último se conoce como despido constructivo o tácito. Particularmente, ello se define como "la renuncia del empleado motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra". Íd. En otras palabras, existe un despido constructivo cuando un empleado se ve forzado a presentar su renuncia debido a las condiciones de trabajo onerosas impuestas por el patrono. Íd., pág. 908.

En estos casos, a diferencia de la presunción de despido injustificado, es el empleado el que está obligado a probar que la única alternativa razonable que le quedaba era el abandono de su cargo para que los actos del patrono constituyan despido constructivo. *Arthur Young & Co. V. Vega III,* 136 DPR 157, 183 (1994). Por lo tanto, no basta con una mera alegación de que la renunciar fue un despido constructivo. *Rivera Figueroa v. Fuller Brush, Co.,* supra, pág. 909. Además, cabe precisar que, no se determina la magnitud y el efecto de los actos del patrono con referencia a la visión subjetiva del empleado en particular, sino que

se utiliza un criterio objetivo al examinar si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono. Íd., pág. 908.

A modo de resumen, esta doctrina requiere: (1) uno o más actos voluntarios por pare del patrono; (2) que [e]stos estén motivados por una razón ajena al legítimo interés de salvaguardar el efectivo desempeño de la empresa o por una motivación que pueda calificarse como caprichosa, arbitraria e irrazonable; y, (3) que se cree una condición onerosa para el empleado que fuerce inevitablemente la renuncia a su puesto. *Figueroa Rivera v. El Telar*, 178 DPR 701, 711 (2010).

### III.

Cuando se recurre de una determinación interlocutoria emitida por el TPI, este foro intermedio tiene discreción para expedir el recurso presentado ante su consideración. Así, luego de examinar el expediente y los argumentos esgrimidos por los peticionarios, a la luz de los criterios de la Regla 52.1 de Procedimiento Civil, *supra,* y de la Regla 40 del Tribunal de Apelaciones, *supra*, acordamos expedir el auto de *certiorari*, toda vez que nos encontramos ante una denegatoria de una moción de carácter dispositivo.

En su recurso, la UIPR impugnó un dictamen que el TPI emitió el 5 de abril de 2024 y notificó el 8 de abril de 2024, declarando No Ha Lugar su solicitud de Sentencia Sumaria. En su primer señalamiento de error, argumentó que el TPI erró al declarar No Ha Lugar su solicitud de Sentencia Sumaria, tras razonar que de los hechos materiales no controvertidos surgía que la eliminación del puesto de la recurrida respondía a la implementación en el Recinto de un plan de reorganización *bona fide*. Por otro lado, sostuvo que el TPI erró al no determinar que la oposición a la moción de sentencia sumaria que presentó la recurrida no cumplió con lo

dispuesto en las Reglas 36.3 (b) y (c) de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. Le asiste la razón. *Veamos.*

Según el precitado derecho, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Consecuentemente, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo, supra.* Al evaluar los escritos presentados por las partes resolvemos que, tras una lectura de la oposición a moción de sentencia sumaria presentada por la parte recurrida, se desprende un claro incumplimiento con los requisitos esbozados en la Regla 36.3 de Procedimiento Civil, *supra,* sobre la forma y contenido de la contestación a la moción dispositiva.

Entiéndase, la parte recurrida no expuso una relación concisa y organizada con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de prueba admisible en evidencia donde se establecen estos hechos. Tampoco realizó una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos. En cambio, se limitó a descansar en las en las aseveraciones o negaciones contenidas en sus alegaciones y no contestó en forma tan detallada y específica como lo haya hecho la parte promovente. Por lo tanto, este Tribunal está facultado a dar por admitidos los hechos bien alegados y debidamente sustentados por la parte promovente de la sentencia sumaria. Dicho lo anterior, el segundo señalamiento de error se cometió.

Resuelto lo anterior, nos corresponde evaluar si existen hechos materiales en controversia y de haberlos, exponer concretamente cuáles están en controversia y cuáles no. *Veamos.* Luego de evaluar los argumentos que presentaron las partes en la vista argumentativa que se celebró el 7 de marzo de 2024, las mociones presentadas y la prueba documental que obra del expediente, el TPI realizó nueve (9) determinaciones de hechos que no estaban en controversia, las cuales procederemos a resumir y adoptar en su totalidad.

La señora Rivera ocupaba un puesto no docente como directora del Programa de AVANCE en la UIPR, recinto de Guayama. En el año 2018, la rectora del recinto de Guayama, la señora De Jesús, junto a su equipo de trabajo, comenzó un plan para la reorganización operacional del recinto. Es importante añadir como hecho incontrovertido que este plan contempló estrategias para los años académicos 2018-2019 a 2021-2022. Los objetivos que se establecieron para la implementación de la reorganización fueron los siguientes: (1) fomentar el desarrollo e implementación de una oferta académica que respondiera a las necesidades educativas de los estudiantes en y fuera de Puerto Rico; (2) evaluar los programas académicos que presentan una disminución significativa de la matrícula en los últimos cinco años para colocarlos en moratoria; y, por último (3) desarrollar e implementar las medidas para lograr reducir los gastos operacionales del Recinto en términos de empleados docentes y no docentes de acuerdo con las proyecciones de matrícula.

Como parte del plan de reorganización, el 6 de mayo de 2021, la UIPR decidió eliminar la plaza que ocupaba la señora Rivera. Se le notificó a esta última que dicha acción se tomó para lograr mayor productividad y eficiencia debido a la disminución de la matricula en el programa de AVANCE. Tras la reorganización, no subsistió

ningún puesto dentro de la clasificación ocupacional de la demandante. A pesar de ello, se le ofreció a la recurrida un puesto de Técnico de Servicios de Matrícula que se encontraba disponible en el recinto de Humacao de la UIPR, con un salario de $1,360.00. La recurrida aceptó la oferta el 13 de mayo de 2021, sin embargo, posteriormente, el 27 de mayo de 2021, notificó que no aceptaba el puesto ofrecido. Así pues, su último día de trabajo fue el 30 de junio de 2021.

Tras examinar los hechos materiales incontrovertidos que estableció el TPI, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria. Colegimos que estos hechos son suficientes para determinar que no hubo un despido injustificado al amparo de la Ley Núm. 80, *supra*, ni un despido constructivo. Consecuentemente, el primer señalamiento de error se cometió.

Según el derecho que antecede, como parte de las circunstancias que justifican el despido de un empleado conforme al Art. 2(e) de la Ley Núm. 80, *supra*, se encuentra la reorganización de una impresa que responde a asuntos en el funcionamiento y manejo de negocios y de índole económico. *Segarra Rivera v. International Shipping Agency, Inc.*, supra, pág. 985. En el caso en el que un patrono despida a una persona utilizando como razón para ello una reorganización en la empresa, este último tiene la obligación de presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad para justificar el despido. Íd., págs. 985-986. En el caso de marras, el peticionario presentó junto a su solicitud de Sentencia Sumaria una copia del plan de reorganización que se implementó en la UIPR, recinto de Guayama, para los años académicos del 2018-2019 a 2021-2022. Además, discutió los objetivos del plan en detalle y el TPI los incluyó como parte de sus determinaciones de hechos.

Como mencionamos anteriormente, como parte de estos objetivos se incluyó el evaluar los programas académicos que presentaban una disminución significativa de la matrícula y desarrollar e implementar las medidas para reducir los gastos operacionales en términos de empleados docentes y no docentes de acuerdo con las proyecciones de matrícula. A base de estos objetivos, la UIPR decidió eliminar el puesto de la señora Rivera para lograr mayor productividad y eficiencia de gastos operacionales ya que el programa de AVANCE había disminuido su matrícula sustancialmente a través de los años. Considerando lo anterior, concluimos que existe prueba suficiente para determinar que en el presente caso hubo un despido justificado, ya que se probó que este se debió a una reorganización empresarial *bona fide.* Es decir, que el despido no se dio por el mero capricho del patrono, sino que fue producto de consideraciones dirigidas a optimizar sus recursos y aumentar sus ganancias para enfrentar problemas financieros de la UIPR. Lo anterior es suficiente para disponer de la controversia de autos, sin que sea necesario dirimir si se llevó a cabo un despido constructivo.

Por último, en lo pertinente, resaltamos que, a pesar de que la eliminación del puesto de la señora Rivera provocó que no subsistiera ningún puesto dentro de su clasificación operacional, se le ofreció un puesto como técnico de servicios en el recinto de Humacao para que esta no quedara desempleada. Como mencionáramos, la recurrida aceptó el puesto, pero luego de quince (15) días de haberlo aceptado se retractó. Dicho eso, es evidente que la parte peticionaria cumplió a cabalidad con el procedimiento de relevar a un empleado de su puesto, por razón de reorganización empresarial.

IV.

Por los fundamentos antes expuestos, ***expedimos*** el recurso de epígrafe y ***revocamos*** el dictamen recurrido. En consecuencia, ordenamos la desestimación con perjuicio de la Demanda.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones